UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHIE A. STOKES, JR.,

        Plaintiff,

   -v-

WAYNE COUNTY, WAYNE COUNTY
SHERIFF'S OFFICE, WAYNE COUNTY
DISTRICT ATTORNEY, DEPUTY
THOMAS D'AMATO, SCRIBNER, JOHN
DOES #1-10, JOHN DOES WAYNE
COUNTY DISTRICT ATTORNEY #1-10,

        Defendants.

_____

**DECISION AND ORDER**

6:21-CV-06657 EAW

## <u>INTRODUCTION</u>

*Pro se* plaintiff Richie A Stokes, Jr. ("Plaintiff") alleges pursuant to 42 U.S.C.

§ 1983 that defendants Wayne County, Wayne County Sheriff's Office, Wayne County

District Attorney, Deputy Thomas D'Amato ("Deputy D'Amato"), Deputy Scribner,

Deputy John Does #1-10 ("Deputy John Does"), and Wayne County Assistant District

Attorney John Does #1-10 ("ADA John Does") (collectively "Defendants") violated his

constitutional rights in connection with an arrest occurring on August 29, 2020. (Dkt. 1).

Pending before the Court are four motions: (1) Defendants' motion for judgment on the

pleadings and summary judgment (Dkt. 69); (2) Plaintiff's motion to file a sur-reply

(Dkt. 86); (3) Plaintiff's motion to reopen discovery (Dkt. 88); and (4) Defendants' motion to reject Plaintiff's motions (Dkt. 90).[1]

For the reasons that follow: (1) Defendants' motion for judgment on the pleadings and summary judgment is granted in part and denied in part; (2) Plaintiff's motion to file a sur-reply is denied; (3) Plaintiff's motion to reopen discovery is denied; and (4) Defendants' motion to reject Plaintiff's motions is denied as moot.

## FACTUAL BACKGROUND

The following facts are taken from Defendants' Rule 56(a)(1) Statement of Material Facts (Dkt. 69-20), Plaintiff's Rule 56(a)(1) Statement of Material Facts (Dkt. 81-1),[2] Plaintiff's verified complaint (Dkt. 1),[3] and the exhibits submitted by the parties, including

---

[1]    In Plaintiff's opposition to Defendants' motion for summary judgment and judgment on the pleadings he asserts that he is "entitl[ed] to summary judgment on his excessive force claim, *Monell* claim and false arrest." (Dkt. 81 at 7). Plaintiff's request is both untimely and procedurally improper. But to the extent it could be construed as a request for summary judgment in Plaintiff's favor, it is denied.

[2]    Plaintiff adopts many of the factual assertions made by Defendants in their Rule 56(a)(1) Statement of Material Facts in his own Rule 56(a)(1) Statement of Material Facts. (See Dkt. 69-20; Dkt. 81-1). The primary difference is how the parties characterize the interactions between Plaintiff and the Defendant law enforcement officers.

[3]    "A plaintiff's verified complaint is to be treated as an affidavit." *Zielinksi v. Annucci*, No. 9:17-CV-1087 (GTS/CFH), 2020 WL 7074845, at *7 (N.D.N.Y. Nov. 12, 2020) (citations omitted); *see also Brandon v. Kinter*, 938 F.3d 21, 26 n.5 (2d Cir. 2019) ("[The plaintiff's] Amended Complaint was sworn under penalty of perjury. Therefore, his allegations in the complaint can be considered as evidence for summary judgment purposes.").

the body worn camera video footage (Dkt. 69-6).[4]   The Court has noted relevant factual disputes.

On August 29, 2020, while on patrol, Defendant Deputy Thomas D'Amato ("Deputy D'Amato") saw a white vehicle traveling on New York State Route 31 in Clyde, New York.  (Dkt. 69-20 at ¶ 4; Dkt. 81-1 at ¶ 1).  Deputy D'Amato took three radar readings which showed that the car was traveling about 70 miles per hour in a 55 mile per hour speed zone.  (Dkt. 69-20 at ¶ 4; Dkt. 81-1 at ¶ 1).  Deputy D'Amato followed the vehicle and, after temporarily losing sight of it, saw that the vehicle failed to obey a stop sign. (Dkt. 69-20 at ¶¶ 5-6; Dkt. 81-1 at ¶¶ 4-5).  Deputy D'Amato activated his vehicle's emergency lights and sirens and followed the vehicle until it pulled over onto a residential lawn at 367 Glasgow Street and stopped.  (Dkt. 69-20 at ¶¶ 6-7; Dkt. 81-1 at ¶¶ 6,8).[5]

---

[4]    Plaintiff and Defendants both rely on video captured by the body worn cameras of Deputy D'Amato, Deputy Scribner, Deputy Munzert, and Deputy Skerrit, filed as four separate media files at Docket 69-6.  (*See* Dkt. 69-20 at ¶¶ 23-78; Dkt. 81-1 at 7-9, 14-22). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted and emphasis added).  Where a video of the relevant events exists and there are no disputes about its accuracy, a court deciding a motion for summary judgment must "view[ ] the facts in the light depicted by the videotape."  *Id.* at 381; *see also Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court on such a motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").  In accordance with these principles, the Court's factual recitation relies on its own review of the video evidence.  For ease of reference, the Court will refer to both the docket number and the deputy when citing to the body worn camera video footage.

[5]    Although Plaintiff includes nearly all of the statements submitted by Defendants in their Rule 56(a)(1) Statements of Material Facts regarding Defendant D'Amato following the white vehicle in his own Rule 56(a)(1) Statement of Material Facts, Plaintiff also states

Deputy D'Amato then approached two men standing at the side of the house and ordered Plaintiff to get on the ground.  (Dkt. 69-6 (D'Amato) at 0:01-0:09; Dkt. 69-20 at ¶ 9; Dkt. 81-1 at ¶ 12).  Plaintiff raised his hands in the air and asked, "for what?" and Deputy D'Amato responded, "because you wouldn't stop."  (Dkt. 69-6 (D'Amato) at 0:09-0:15; Dkt. 69-20 at ¶¶ 25-26; Dkt. 81-1 at ¶ 38).  Plaintiff laid on the ground and Deputy D'Amato handcuffed Plaintiff's hands behind his back.  (Dkt. 69-6 (D'Amato) at 0:15-1:04; Dkt. 69-20 at ¶¶ 27-28; Dkt. 81-1 at ¶ 39).  Deputy D'Amato then escorted Plaintiff to his police vehicle.  (Dkt. 69-6 (D'Amato) at 1:04-2:10; Dkt. 69-20 at ¶ 29; Dkt. 81-1 at ¶ 40).  According to Deputy D'Amato, he smelled alcohol on Plaintiff's breath and observed slurred speech and Plaintiff's eyes were glassy and bloodshot.  (Dkt. 69-11 at ¶ 14; Dkt. 69-20 at ¶ 11; Dkt. 81-1 at ¶ 17).

After Deputy D'Amato searched Plaintiff, he told Plaintiff to get in the back of his police vehicle and Plaintiff refused.  (Dkt. 69-6 (D'Amato) at 4:51-5:09; Dkt. 69-20 at ¶ 36; Dkt. 81-1 at ¶ 47).  Plaintiff asked if he was under arrest and Deputy D'Amato said he was being arrested for driving while intoxicated.  (Dkt. 69-6 (D'Amato) at 5:09-5:12; Dkt. 69-20 at ¶ 36; Dkt. 81-1 at ¶ 47).  Plaintiff continued to refuse to get in the police vehicle, stating that he was not driving.  (Dkt. 69-6 (D'Amato) at 5:12-5:40; Dkt. 69-20 at ¶ 36;

---

that these events were not recorded by the body worn camera of Defendant D'Amato and therefore only constitute Defendants' "hypothesis" of events "similar to the girl who cried wolf."  (*See* Dkt. 81-1 at ¶ 7).  Indeed, Plaintiff alleges in his complaint that he was "a lawful pedestrian and was not operating a motor vehicle" at the time he was approached by Defendant D'Amato (Dkt. 1 at ¶ 17), and no video footage was produced by Defendants regarding the alleged car chase.

Dkt. 81-1 at ¶ 47).   Plaintiff and Deputy D'Amato continued this exchange for approximately five minutes.  (Dkt. 69-6 (D'Amato) at 5:12-9:46).

Deputy Zachary Scribner ("Deputy Scribner") arrived and stood near Plaintiff and Deputy D'Amato.  (*Id.* (Scribner) at 0:01-2:13; Dkt. 69-12 at ¶¶ 6-8).  Deputy D'Amato and Deputy Scribner then forcibly pushed Plaintiff into the backseat of the police vehicle. (Dkt. 69-6 (Scribner) at 2:14-2:21; Dkt. 69-20 at ¶ 12; Dkt. 81-1 at ¶ 18).  The altercation lasted approximately seven seconds.  (Dkt. 69-6 (Scribner) at 2:14-2:21).   During the altercation, Plaintiff alleges that Deputy D'Amato and Deputy Scribner "smash[ed] Plaintiff's head on the patrol car. . . ."  (Dkt. 1 at ¶ 21).  The body worn camera video footage does not show Plaintiff's head being smashed but the portion where Plaintiff is forcibly put into the vehicle is not clear.  (*See* Dkt. 69-6).

Deputy D'Amato and Deputy Scribner transported Plaintiff to the Wayne County Sheriff's Office, and he was provided the opportunity to perform standard sobriety tests. (Dkt. 69-20 at ¶ 14; Dkt. 81-1 at ¶ 33).  Plaintiff refused to perform the sobriety tests.  (Dkt. 69-6 (D'Amato) at 28:42-31:50; 38:50-45:00; Dkt. 69-20 at ¶ 14; Dkt. 81-1 at ¶ 33)

The white vehicle was impounded and searched.  (Dkt. 69-19; Dkt. 69-20 at ¶ 20). Deputy Thomas Munzert ("Deputy Munzert") conducted the search of the vehicle and discovered, among other objects, a metal tin containing marijuana.  (Dkt. 69-13 at ¶ 13; Dkt. 69-20 at ¶¶ 19-20, 22).  Plaintiff does not address Defendants' statement of undisputed facts regarding the impounded vehicle or the material discovered in the search.

Plaintiff was charged with Felony DWI, violations of various provisions of New York State Vehicle and Traffic Law, unlawful possession of marijuana, unlawfully fleeing,

and obstruction of government administration. (Dkt. 69-20 at ¶ 15; Dkt. 69-4; Dkt. 69-5). The Galen Town Court granted Plaintiff's motion to dismiss the charges on August 11, 2021. (Dkt. 69-16).

Plaintiff's complaint contains the following causes of action: (1) claim pursuant to 42 U.S.C. § 1983 for violations of the fourth, fifth and fourteenth amendments based upon false arrest and violations of Plaintiff's equal protection and due process rights, against Wayne County, the Wayne County Sheriff's Office, Deputy D'Amato, Deputy Scribner, and the Deputy John Does; (2) § 1983 claim of excessive force against Deputy D'Amato and Deputy Scribner; (3) claim pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against Wayne County; (4) § 1983 claim for substantive due process violations by Wayne County, Deputy D'Amato, Deputy Scribner, and Deputy John Does; (5) § 1983 claim for procedural due process violations by the Wayne County Sheriff's Office, Wayne County District Attorney, and the ADA John Does; (6) § 1983 claim for malicious prosecution in violation of the fourth and fourteenth amendments against all Defendants; (7) state law assault and battery claim against Wayne County, Deputy D'Amato, Deputy Scribner, and Deputy John Does; and (9) state law claim for negligent hiring, supervision, and retention against Wayne County. Plaintiff seeks damages of $10,000,000 on each of his claims.

## PROCEDURAL BACKGROUND

Plaintiff commenced this action on October 26, 2021. (Dkt. 1). After the close of discovery (Dkt. 64), Defendants filed the present motion on July 12, 2024 (Dkt. 69). Plaintiff requested an extension of time to respond to the motion on September 10, 2024,

nearly a month after his opposition was due.  (Dkt. 76).  The Court granted his request for

an extension, but warned Plaintiff that no further extensions would be granted absent

extraordinary circumstances.  (Dkt. 78).  After a further requested extension was denied

(Dkt. 80), Plaintiff filed his opposition on December 5, 2024 (Dkt. 81), and Defendants

replied on December 18, 2024 (Dkt. 84).  Plaintiff then requested permission to file a sur-

reply and oversized brief (Dkt. 86) on December 26, 2024.  Plaintiff then filed a motion

seeking an expedited hearing and a request to reopen discovery.  (Dkt. 88).  Defendants

filed a single-page letter motion asking the Court to reject Plaintiff's motions (Dkt. 90), to

which Plaintiff responded with a 42-page opposition (Dkt. 92).[6]

## DISCUSSION

## I.    Plaintiff's Motion to File a Sur-Reply

Plaintiff requests permission to file a sur-reply and oversized brief.  (Dkt. 86).  He

makes this request in order to have a "full opportunity to reply and present material facts

and discoverable evidence to prove the elements" of his claims.  (Dkt. 86 at 1).  In his

motion papers, Plaintiff explains the importance of the body worn camera video and

provides a copy of the Wayne County Sheriff's Office policy on body worn cameras and

in-car cameras.  (*Id*. at 1-2, 7-15).  As noted above, the Court has reviewed and considered

the body worn camera video in deciding Defendants' pending motion.

---

[6]    The content of Plaintiff's opposition suggests that it may have been intended to
address, at least in part, another case that he has pending in this Court.  *See Stokes v. Wayne
County et al.*, Case No. 6:23-cv-06482-EAW-CDH, Dkt. 1 (W.D.N.Y. Aug. 22, 2023).

This District's Local Rules of Civil Procedure state that "[a]bsent permission of the Judge hearing the motion, sur-reply papers are not permitted."  Loc. R. Civ. P. 7(a)(6). "[W]hether to permit the filing of a sur-reply is entirely within the Court's discretion." *Marseet v. Rochester Inst. of Tech.*, No. 20-CV-7096FPG, 2022 WL 2718509, at *1 (W.D.N.Y. July 13, 2022).

The Court already granted Plaintiff an extension to respond to Defendants' motion of more than 110 days from his original filing deadline.  (Dkt. 78).  In granting Plaintiff's request for an extension of time, the Court was clear that no further extensions would be granted absent extraordinary circumstances.  (*Id.*).  Furthermore, Plaintiff does not indicate what new facts or evidence would be introduced in his sur-reply or why that information was not provided in his initial opposition.  Indeed, the basis for the request appears to be the body worn camera video, but as already noted, the Court has considered that evidence in connection with the pending motion.  Therefore, in light of those considerations, the Court exercises its discretion to deny Plaintiff's request to file a sur-reply.

## II.    **Plaintiff's Motion to Reopen Discovery**

Plaintiff seeks an expedited hearing pursuant to Loc. R. Civ. P. 7(d)(1) and to reopen discovery pursuant to Fed. R. Civ. P. 56(d).  (Dkt. 88).  The motion is denied.

Rule 56(d) provides that "[i]f a nonmovant [on a summary judgment motion] shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  But a "trial court may properly deny further

discovery under Rule 56(d) 'if the nonmoving party has had a fully adequate opportunity for discovery.'" *Turner v. McDonough*, No. 18 CIV. 4038 (AEK), 2021 WL 965626, at *2 (S.D.N.Y. Mar. 15, 2021) (quoting *Moccia v. Saul*, 820 F. App'x 69, 70 (2d Cir. 2020)). "A number of courts have held that relief under Rule 56(d) is generally unavailable when the summary judgment motion was made after the close of discovery." *Jean-Laurent v. Lane*, No. 911CV00186NAMTWD, 2016 WL 4775742, at *11 (N.D.N.Y. Aug. 18, 2016), *report and recommendation adopted*, No. 9:11-CV-0186, 2016 WL 4768828 (N.D.N.Y. Sept. 13, 2016) (collecting cases).

Indeed, "[t]he decision whether to reopen discovery is within a district court's discretion." *Moroughan v. Cnty. of Suffolk*, 320 F. Supp. 3d 511, 515 (E.D.N.Y. 2018); *see also Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) (district court has "broad discretion to direct and manage the pre-trial discovery process."). "In deciding whether to reopen discovery, courts consider whether good cause exists." *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011). The following six-part test is utilized to assess the request:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Moroughan*, 320 F. Supp. 3d at 515. The party seeking to reopen discovery bears the burden of establishing good cause. *Costa v. Sears Home Improvement Prods., Inc.*, 178 F. Supp. 3d 108, 111 (W.D.N.Y. 2016).

Plaintiff wholly fails to satisfy his burden to establish good cause to reopen discovery. The instant lawsuit was filed more than three years ago, and the parties have had ample time and opportunity to conduct discovery in this matter. The deadline to complete fact discovery, initially set for August 1, 2022, was extended five times ultimately to January 31, 2024. (*See* Dkt. 12; Dkt. 20; Dkt. 26; Dkt. 52; Dkt. 56; Dkt. 64). No further extensions were requested and discovery closed on January 31, 2024. It was only after Defendants filed their reply papers in support of their pending dispositive motion that Plaintiff, for the first time, claimed he needed additional discovery—some six months after Defendants first filed the pending motion. (Dkt. 88).

Plaintiff's requests for discovery appear wholly unrelated to the pending lawsuit. Under the heading "Newly Discoverable Evidence" in his declaration supporting the Rule 56(d) motion, Plaintiff provides what appears to be a copy-and-pasted letter from the New York State Department of Health suspending the certificate of an EMT for one year due to violations of a prior stipulation and order. (Dkt. 88 at 4-6). Plaintiff also asserts that he is currently engaged in a Freedom of Information Law ("FOIL") dispute with the Town of Lyons regarding EMT reports and that the Town of Lyons is engaged in fraud. (*Id.* at 7-8). Neither the Town of Lyons nor any EMT is a defendant in the current lawsuit. Plaintiff also requests that the Court issue subpoenas for 17 individuals but on their face, none of them appear to have any relevance to the pending claims. (*Id.* at 10-11).

In sum, there is no basis for granting Plaintiff's motion to reopen discovery.[7]

---

[7]  Because the Court has denied Plaintiff's motions filed at Docket 86 and Docket 88, it denies as moot Defendants' motion to reject Plaintiff's motions. (Dkt. 90).

III.   **Defendants' Motion for Judgment on the Pleadings and Summary Judgment**

A.   **Legal Standards**

1.   **Judgment on the Pleadings Standard**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (internal quotation marks and citation omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## 2. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the non-moving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103

(W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  The non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.  Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

### 3.  Section 1983

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

In addition, with respect to any § 1983 claim, a plaintiff is required to demonstrate a defendant's personal involvement in the deprivation of a federal constitutional right.

*Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023). "To do so a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

## B. <u>Abandonment</u>

Defendants argue that Plaintiff's opposition fails to address several of his causes of action, and thus those claims should be dismissed as abandoned. (Dkt. 84 at 15-16). "Courts have regularly dismissed claims as abandoned where a plaintiff has failed to address them in opposing defendant's dispositive motions." *Brown v. City of New York*, No. 19-CV-03375 (LJL), 2023 WL 4548339, at *4 n.3 (S.D.N.Y. July 14, 2023) (quotation omitted). "However, where a *pro se* litigant fails to address every claim in its opposition to a motion for summary judgment, the Second Circuit has cautioned that '[t]he district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate.'" *Id.* (quoting *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014)). Accordingly, the Court declines to consider Plaintiff's claims abandoned and examines the record before it to determine Defendants' motion.

## C. <u>Defendant Wayne County Sheriff's Office</u>

Defendants argue that the claims against the Wayne County Sheriff's Office must be dismissed because it is merely an administrative arm of Wayne County and therefore not capable of being sued. (*See* Dkt. 69-21 at 35).[8] Pursuant to Fed. R. Civ. P. 17, New

---

[8]    Defendants also argue that Defendant Wayne County District Attorney must also be dismissed for the same reason. (*See* Dkt. 69-21 at 35). However, Plaintiff's claims against

York law governs an entity's capacity to be sued. "Under New York Law, a county is a municipal corporation capable of bringing suit and being sued." *Jackson v. Cnty. of Erie*, No. 17-CV-396S, 2020 WL 5642277, at *4 (W.D.N.Y. Sept. 22, 2020) (citing N.Y. Gen. Mun. Law § 2). "[D]epartments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). This includes county sheriff's departments. *See, e.g.*, *Long v. Cnty. of Orleans*, 540 F. Supp. 3d 344, 350 (W.D.N.Y. 2021). As a result, Plaintiff cannot maintain his claims against the Wayne County Sheriff's Office, and it is dismissed as a defendant.

### D. <u>Defendant Wayne County District Attorney and ADA John Does</u>

Plaintiff alleges that the Wayne County District Attorney and ADA John Does prosecuted Plaintiff "[d]espite knowing that the criminal charges were without legal basis," (Dkt. 1 at ¶¶ 28, 77), and that the prosecutors withheld body worn camera footage (*id.* at ¶¶ 71, 79). Defendants argue that any action asserted against Wayne County District Attorney and ADA John Does is barred by absolute immunity. (Dkt. 69-21 at 35). The Court agrees.

"The doctrine of absolute immunity applies broadly to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v.*

---

the Wayne County District Attorney are against the "individual and employee of Wayne [County]" rather than against the entire district attorney's office. (Dkt. 1 at ¶ 11). Accordingly, Defendants' request to dismiss Plaintiff's claims against the Wayne County District Attorney on this basis is denied.

*Spota*, 27 F.4th 855, 863-64 (2d Cir. 2022) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)).  The Supreme Court has held that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  Indeed, "[p]rosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation."  *Bentley v. McNamara*, No. 617CV444TJMATB, 2017 WL 2890065, at *3 (N.D.N.Y. Apr. 24, 2017), *report and recommendation adopted*, No. 617CV444TJMATB, 2017 WL 2881150 (N.D.N.Y. July 6, 2017); *see also Shmueli v. City of New York*, 424 F.3d 231, 238-39 (2d Cir. 2005) (holding that prosecutors were entitled to absolute immunity from allegations that they "maliciously prosecuted [plaintiff] for various crimes, all of which they knew she was innocent of committing").  Because the immunity attaches to the function of the prosecutor, it extends to prosecutors who "initiat[e] a prosecution," *see Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (citations omitted), "conspir[e] to present false evidence at a criminal trial," *see Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994), or withhold exculpatory evidence, *see Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503-05 (2d Cir. 2004).

Accepting as true that the Wayne County District Attorney and ADA John Does withheld body worn camera footage and prosecuted Plaintiff in bad faith, Plaintiff's allegations do not overcome absolute prosecutorial immunity.  *See Shmueli*, 424 F.3d at 237 ("A prosecutor is also entitled to absolute immunity despite allegations of . . . the deliberate withholding of exculpatory information."); *Dory*, 25 F.3d at 83 ("[A]bsolute

immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate."). Thus, the claims against Defendant Wayne County District Attorney and ADA John Does are dismissed because they are entitled to absolute immunity.

### E. John Doe Defendants

Plaintiff asserted claims against "John Doe" defendants under § 1983 for false arrest and an equal protection violation (Dkt. 1 at ¶¶ 33-44), substantive and procedural due process violations under the U.S Constitution and New York State Constitution (*id.* at ¶¶ 65-72), malicious prosecution under the Fourth and Fourteenth Amendments (*id.* at ¶¶ 73-83), and state-law assault and battery claims (*id.* at ¶¶ 84-96). Defendants argue that any claim brought against a John Doe, including the Deputy John Does and ADA John Does, must be dismissed because Plaintiff failed to substitute actual defendants for the John Does before the statute of limitations ran. (Dkt. 69-21 at 35-36). Plaintiff does not argue to the contrary. The Court agrees with Defendants and accordingly dismisses any claims against the unnamed John Does.

"Where a plaintiff names 'John Doe' as a placeholder defendant because he does not know the identity of an individual defendant, he generally is required to replace the placeholder with a named party within the applicable statute of limitations period." *Ortiz v. Wagstaff*, 523 F. Supp. 3d 347, 360 (W.D.N.Y. 2021) (quotation omitted). The applicable statute of limitations for claims under § 1983 is a state's "general or residual statute for personal injury actions. . . ." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (internal quotation and alterations omitted). In New York, that period is three

- 17 -

years.  N.Y. C.P.L.R. § 214(5).  This three-year limitations period is also applicable to constitutional torts brought under the New York State Constitution.  *Brown v. New York*, 250 A.D.2d 314, 318-19 (3d Dep't 1998).  The events outlined by Plaintiff in his complaint occurred on August 29, 2020.  (Dkt. 1 at ¶ 16).  Accordingly, the limitations period for Plaintiff's equal protection, procedural due process, and substantive due process claims terminated on August 29, 2023.  The limitations period for Plaintiff's false arrest claim also terminated on August 29, 2023.[9]

"[T]he applicable statute of limitations for a malicious prosecution claim is borrowed from the statute of limitations for the analogous claim under the law of the state where the cause of action accrued. . . ."  *Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017) (citations omitted).  New York law provides a one-year limitations period for malicious prosecution claims.  N.Y. C.P.L.R. 215(3).  However, New York federal and state courts have generally recognized that New York General Municipal Law § 50-i applies to causes of action brought against a municipality's employees or officers who the municipality must indemnify, which provides a claimant one year and ninety days after the claim accrues to file suit.  *See Rentas v. Ruffin*, 816 F.3d 214, 226 (2d Cir. 2016); *Conte v. County of Nassau*, 596 F. App'x 1, 5 (2d Cir. 2014) (summary order) (noting that New York's General

---

[9]    Plaintiff was arrested and arraigned on August 29, 2020.  (Dkt. 69-16 at 1).  Thus, the false arrest claim accrued on August 29, 2020, and ran three years later on August 29, 2023.  *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 601 (E.D.N.Y. 2017) ("Under federal law, a Section 1983 false arrest claim accrues at the time that the alleged false arrest ends, i.e., when the arrestee 'becomes held pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges." (quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (alteration in original)).

Municipal Law § 50-i "takes precedence" in suits against a municipality's officers "if the municipality is required to indemnify the defendant"). "The obligation to indemnify in turn depends upon the resolution of the fact-sensitive question of whether [the individual defendants] were acting within the scope of their employment . . . in committing the alleged tortious acts." *Conte*, 596 F. App'x at 5 (quoting *Int'l Shared Servs., Inc. v. Cnty. of Nassau*, 222 A.D.2d 407, 408 (2d Dep't 1995)).

For the purpose of this limited analysis, the determination of whether the John Doe defendants were acting within the scope of employment is not determinative as both limitation periods under C.P.L.R. 215(3) and New York General Municipal Law § 50-i have lapsed. "[I]n malicious prosecution suits under Section 1983, the statute of limitations begins to run when the prosecution terminates in the plaintiff's favor." *Spak*, 857 F.3d at 462 (2d Cir. 2017) (internal quotation omitted). Plaintiff's criminal prosecution in this matter was terminated in his favor on August 11, 2021. (Dkt. 69-16 at 1). Applying the more generous limitations period of one year and ninety days under New York's General Municipal Law § 50-i, the limitation period for Plaintiff's malicious prosecution claim ended on November 9, 2022.

Finally, Plaintiff's state-law claims against the John Doe defendants are subject to a similar analysis as the malicious prosecution claim. N.Y. C.P.L.R. 215(3) also provides a one-year statute of limitations for assault and battery. As explained above, the limitations period is one-year and ninety-days if Wayne County is required to indemnify the individual John Doe defendants. *See Rentas*, 816 F.3d at 226; N.Y. Gen. Mun. Law § 50-i. The alleged assault and battery occurred on August 29, 2020. (Dkt. 1 at ¶¶ 16, 21; Dkt. 69-20

at ¶¶ 4, 12).  Applying the one-year and ninety-day period set forth in New York's General Municipal Law § 50-i, the limitation period for Plaintiff's assault and battery claims ended on November 27, 2021.

Thus, the statute of limitation has run on all claims asserted against the John Doe defendants.  Because Plaintiff failed to substitute actual defendants for the John Does before the limitations period ended, his claims against the John Does must be dismissed.

## F.  Fifth Amendment Claims

In Plaintiff's first cause of action, he alleges, in part, that Defendant Wayne County, Deputy D'Amato, and Deputy Scribner violated his Fifth Amendment equal protection and due process rights.  (Dkt. 1 at ¶¶ 34-35, 40).  "It is well-established that 'the Fifth Amendment appl[ies] to and restrict[s] only the Federal Government.'"  *Griffin v. City of New York*, 880 F. Supp. 2d 384, 404 (E.D.N.Y. 2012) (quoting *Pub. Utils. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952)) (alterations in original).  Plaintiff has not alleged that any of the defendants are federal employees or otherwise subject to the Fifth Amendment. Accordingly, Plaintiff's Fifth Amendment claims are dismissed.

## G.  False Arrest

Plaintiff's first cause of action asserts, in part, a § 1983 claim for false arrest.  (Dkt. 1 at ¶ 34).  Defendants argue that Plaintiff's false arrest claim must be dismissed because Defendants had probable cause to arrest him.  The Court disagrees that the presence of probable cause can be resolved as a matter of law.

"A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013)

(citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  Under New York law, a plaintiff

asserting a false arrest claim must prove that "(1) the defendant intended to confine the

plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent

to the confinement and (4) the confinement was not otherwise privileged."  *Liranzo v.*

*United States*, 690 F.3d 78, 95 (2d Cir. 2012) (emphasis and quotation omitted).  "The

existence of probable cause to arrest constitutes justification and is a complete defense to

an action for false arrest, whether that action is brought under state law or under § 1983."

*Gonzalez*, 728 F.3d at 155 (quoting *Weyant*, 101 F.3d at 852).

### 1. Probable Cause

Defendants argue that Deputy D'Amato and Deputy Scribner had probable cause to

arrest Plaintiff based, in part, on Deputy D'Amato's observations of "plaintiff's driving,

odor of alcoholic beverage, and impaired speech. . . . " (Dkt. 69-21 at 16).[10]  Indeed, when

Plaintiff asks why he is being arrested, Deputy D'Amato tells him multiple times he is

being arrested for driving while intoxicated.  (Dkt. 69-6 (D'Amato) at 4:51-5-45; Dkt. 69-

20 at ¶ 36).  Defendants produced multiple forms of admissible evidence that corroborate

Deputy D'Amato's account, including his sworn declaration (Dkt. 69-11), Defendant's

710.30 Notice (Dkt. 69-17), and the Subject Resisting Report (Dkt. 69-8).  Each of these

forms of evidence is based on Deputy D'Amato's own account.  There were no other

---

[10]     Defendants also argue that Plaintiff's "screening test refusal, chemical test refusal .
. .  his resistance to apprehension" and "the presence of marijuana [in the white vehicle]
contributed to the defendants' probable cause." (Dkt. 69-21 at 16).  However, the record
does not support the conclusion that those factors were known to Defendant D'Amato at
the time he arrested Plaintiff.

officers present with Deputy D'Amato when he saw the white vehicle allegedly speeding or when he followed it to the residential lawn. Deputy Scribner arrived after Deputy D'Amato handcuffed Plaintiff and escorted him to his police vehicle. (Dkt. 69-12 at ¶¶ 7-8). Defendants concede that Deputy Scribner was involved in Plaintiff's arrest. (Dkt. 69-21 at 16).

Plaintiff rejects Deputy D'Amato's account and contends that he was not driving the vehicle prior to his arrest. (Dkt. 81 at 6, 8; Dkt. 1 at ¶¶ 16-19). While Plaintiff did not produce or point to any admissible evidence to support this argument in his opposition to the summary judgment motion, the Court may consider Plaintiff's verified complaint, which was sworn under penalty of perjury and notarized, as an affidavit for the purpose of the summary judgment motion. *See Brandon v. Kinter*, 938 F.3d 21, 26 n.5 (2d Cir. 2019) ("[The plaintiff's] Amended Complaint was sworn under penalty of perjury. Therefore, his allegations in the complaint can be considered as evidence for summary judgment purposes."); *Bailey v. Weckesser*, No. 18-CV-6292-FPG, 2021 WL 5086394, *1 n.2 (W.D.N.Y. Nov. 2, 2021) ("The Court may consider the allegations in [the plaintiff's] complaint as evidence because he signed the complaint under penalty of perjury."). In his complaint, Plaintiff states that he "was a lawful pedestrian and was not operating a motor vehicle at the time of [Deputy] D'Amato and [Deputy] Scribner['s] unlawful seizure." (Dkt. 1 at ¶ 17). Plaintiff's account that he was a lawful pedestrian conflicts with Deputy D'Amato's account that he was driving. Viewing Plaintiff's argument in a light most favorable to him as the non-moving party, the Court concludes that he raises a dispute as to a material fact, i.e. whether Deputy D'Amato saw Plaintiff driving the white vehicle and

had probable cause to arrest him and indeed, whether Plaintiff was even driving the vehicle prior to his apprehension.

The body worn camera video produced by Defendants is not helpful in settling this dispute. Deputy D'Amato's body worn camera video begins when he is already out of his police vehicle and ordering Plaintiff to lie on the ground. (Dkt. 69-6 (D'Amato) at 0:01-0:09). When the video starts, Plaintiff is standing far away from the white vehicle. (*Id.*). Essentially, the record shows two competing accounts of what happened before Deputy D'Amato's body worn camera video begins. A reasonable juror could choose to accept Plaintiff's testimony over that of Deputy D'Amato, and conclude that Plaintiff was not driving the vehicle—thus negating probable cause for the arrest. *See, e.g.*, *Garnett v. City of New York*, No. 1:13-CV-7083-GHW, 2014 WL 3950904, at *9 (S.D.N.Y. Aug. 13, 2014) (denying summary judgment on false arrest claim where officer's account of the plaintiff's involvement in drug transaction differed from the version provided by the plaintiff).

### 2. Qualified Immunity

Defendants argue that Deputy D'Amato and Deputy Scribner are entitled to qualified immunity on Plaintiff's false arrest claim as a matter of law even if the facts do not definitely establish probable cause. (Dkt. 69-21 at 16-17). The Court denies summary judgment regarding qualified immunity for Deputy D'Amato, but grants summary judgment in favor of Deputy Scribner finding that he is entitled to qualified immunity.

"Qualified immunity 'shields officers from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known.'" *Singletary v. Allen*, 588 F. Supp. 3d 359, 371 (W.D.N.Y. 2022) (quoting *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021)).  To constitute a clearly established right, courts look at prior precedent to determine whether is "it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

"Without a doubt, the right not to be arrested without probable cause is clearly established." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000).  In the false arrest context, an officer will still be entitled to qualified immunity if "arguable probable cause" existed.  *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quotation omitted).

As outlined above, there is a dispute of material fact regarding whether Deputy D'Amato had probable cause to arrest Plaintiff.  Because of this dispute, the Court cannot conclude that it was objectively reasonable for Deputy D'Amato to believe that probable cause existed.  Similarly, based on the current record, the Court cannot say that officers of reasonable competence could find that there was probable cause for Deputy D'Amato to arrest Plaintiff.  In other words, if as Plaintiff claims, Deputy D'Amato did not observe him operating the vehicle, then it would have been unreasonable as a matter of law for him to arrest Plaintiff.  No reasonable officer could conclude otherwise.

- 24 -

However, a different outcome is required for Deputy Scribner.  By the time Deputy Scribner arrived at the Glasgow Street address, Plaintiff was already in handcuffs and standing with Deputy D'Amato at the rear driver's side door of Deputy D'Amato's patrol vehicle, refusing to comply with his directions to get into the vehicle.  (Dkt. 69-12 at ¶¶ 6-7).  Deputy Scribner did not observe any of the underlying disputed facts regarding the vehicle chase.  At the time Deputy Scribner arrived at the Glasgow Street address, it was objectively reasonable for Deputy Scribner to believe that Deputy D'Amato had probable cause to arrest Plaintiff based on the circumstances confronting him at the scene when he arrived.  *See Guerrero v. Scarazzini*, 274 F. App'x 11, 13 (2d Cir. 2008) (summary order) (holding that officers were entitled to qualified immunity based on arguable probable cause as the plaintiff "was lying on the ground in handcuffs, having already been apprehended by other members of [law enforcement]" when the defendant officers arrived on the scene).  In other words, even construing the facts in the light most favorable to Plaintiff, at best Deputy Scribner was mistaken as to the existence of probable cause to arrest Plaintiff, based on the situation he confronted when arriving at the scene.  *See McMahon v. Judkins*, No. 3:22-CV-00613 (SVN), 2024 WL 21653, at *7 (D. Conn. Jan. 2, 2024) ("[I]n situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity.").  As a result, the Court grants summary judgment dismissing Plaintiff's false arrest claim against Deputy Scribner, finding that he is entitled to qualified immunity as a matter of law.  Plaintiff's claim against Deputy D'Amato may proceed to trial.

### H. **Malicious Prosecution**

Plaintiff asserts a § 1983 malicious prosecution claim against all Defendants. (Dkt. 1 at ¶¶ 73-83). To prevail on a § 1983 claim for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted). To establish the elements of a malicious prosecution claim under New York law, a plaintiff must demonstrate that: "(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in plaintiff's favor." *Rentas*, 816 F.3d at 220 (2d Cir. 2016). In addition, a plaintiff must show that there was "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

To demonstrate that a proceeding was begun with malice, Plaintiff must show that the "prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of [his rights]." *Manganiello*, 612 F.3d at 163-64 (quoting *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996)). A "lack of probable cause generally creates an inference of malice." *Id.* (quotation omitted). "The probable cause determination relevant to a malicious prosecution claim differs from that relevant to a false arrest claim, and the two determinations play different roles in the two causes of action." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000). "[I]n a malicious prosecution action, the relevant probable cause determination is whether there was probable cause to believe the

criminal proceeding could succeed and, hence, should be commenced." *Id.* (citation omitted). Therefore, "the existence, or lack, of probable cause is measured at a different point in time in a malicious prosecution action than a false arrest action, where the prosecution follows a warrantless arrest." *Id.* In a malicious prosecution action, "probable cause is measured as of the time the judicial proceeding is commenced (e.g., the time of the arraignment), not the time of the preceding warrantless arrest." *Id.* (citation omitted). Accordingly, "information discovered . . . after the arrest, but before the commencement of proceedings, is relevant to the determination of probable cause in" a malicious prosecution claim. *Id.*

Here, the judicial proceedings commenced the same night that Plaintiff was arrested. (Dkt. 69-5). Plaintiff's criminal charges were terminated in his favor when they were dismissed. (Dkt. 69-21 at 13; Dkt. 69-16).[11] Defendants argue that Plaintiff's malicious

---

[11]    Defendants argue that they are entitled to qualified immunity on Plaintiff's malicious prosecution claim because Plaintiff's charges were dismissed in the interest of justice. (Dkt. 69-21 at 31-32). Defendants contend:

> [P]laintiff obtained a dismissal due to a lack of speedy trial. This is not a clearly established affirmative indication of innocence. Qualified immunity applies as the Supreme Court's ruling in *Thompson v. Clark* (142 S. Ct. 1332) was issued in 2022 prior to the involved 2020 arrest. The qualification for a favorable termination of a criminal proceeding was not clearly established in 2020.

(*Id.*). Defendants appear to conflate the requirement that a right be clearly established for purposes of the qualified immunity analysis, and the development of the law as to what a plaintiff must establish to prove the elements of a malicious prosecution claim. The Supreme Court held in *Thompson v. Clark* that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." 596 U.S. 36, 49 (2022).

prosecution claim should be dismissed because there was probable cause to arrest Plaintiff.

(Dkt. 69-21 at 30-31). But because there is an issue of fact as to whether Plaintiff was

operating the vehicle and whether there was probable cause to arrest Plaintiff, an issue of

fact also exists as to whether there was probable cause to believe the criminal proceeding

against Plaintiff could succeed.[12] Thus, a reasonable jury could find in favor of Plaintiff's

malicious prosecution claim against Deputy D'Amato, but because the record does not

support a finding that Deputy Scribner was personally involved in the prosecution,

summary judgment is granted in favor of Deputy Scribner. *See Kravitz*, 87 F.4th at 129;

*Tangreti*, 983 F.3d at 618.

And on this record, the Court cannot conclude that Deputy D'Amato is entitled to

qualified immunity on the malicious prosecution claim. "Similar to a false arrest claim, a

police officer likewise is entitled to qualified immunity on a malicious prosecution claim

if there was arguable probable cause at the time the criminal proceeding commenced and

---

This holding did not alter the scope of qualified immunity. Rather, it dealt with what a
Plaintiff must prove in terms of favorable termination of a criminal proceeding to establish
the elements of a malicious prosecution claim.

[12]    Although not raised by Defendants, the additional charges against Plaintiff outside
the vehicle and traffic law violations, do not alter the analysis. First, if Plaintiff was not
operating the vehicle, that would also call into question any finding of probable cause
related to the marijuana in the vehicle (which was owned by "EAN Holdings, LLC" (*see*
Dkt. 69-19)), and the record is not clear as to the basis for the obstruction of government
administration charge. Second, even if some of the charges against Plaintiff were valid,
that will not defeat a Fourth Amendment malicious prosecution claim if at least some of
the charges lacked probable cause. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558-59
(2024) ("Do the valid charges insulate the official from a Fourth Amendment malicious-
prosecution claim relating to the invalid charge? The answer is no: The valid charges do
not create a categorical bar.").

continued." *Reeder v. Vine*, No. 6:20-CV-06026 EAW, 2023 WL 2044126, at *9 (W.D.N.Y. Feb. 16, 2023) (quotation and alteration omitted).  As with Plaintiff's false arrest claim, whether Deputy D'Amato had probable cause is a disputed material fact that precludes the Court from ruling that Deputy D'Amato is entitled to qualified immunity as a matter of law.  *See Jackson v. City of New York*, 939 F. Supp. 2d 235, 256-57 (E.D.N.Y. 2013) (holding on summary judgment motion that defendant officers were not entitled to qualified immunity on false arrest and malicious prosecution claims where there was a dispute as to whether the defendants had probable cause to arrest the plaintiff).

## I.  Excessive Force

Plaintiff alleges that Deputy D'Amato and Deputy Scribner used excessive force during his arrest because they "assaulted Plaintiff and smashed Plaintiff's head on top of the [p]olice cruiser."  (Dkt. 1 at ¶¶ 46-47).  Defendants contend that only reasonable force was used in the arrest.  (Dkt. 69-21 at 23).  On the record before it, the Court cannot resolve whether the force used was objectively unreasonable as a matter of law.  Similarly, issues of fact preclude a finding that either Deputy D'Amato or Deputy Scribner are entitled to qualified immunity.

"The Fourth Amendment, which protects against unreasonable seizures, governs a claim that excessive force was used in connection with an arrest."  *Mickle v. Morin*, 297 F.3d 114, 120 (2d Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 388, 391-95 (1989)).  "Claims that police officers used excessive force during an arrest are analyzed under the Fourth Amendment's reasonableness standard."  *Brooks v. Whiteford*, 384 F. Supp. 3d 365, 369 (W.D.N.Y. 2019) (citing *Graham*, 490 U.S. at 395).  "In order to establish a Fourth

Amendment excessive-force claim, the plaintiff must show that the actions of the arresting officer were objectively unreasonable in light of the surrounding circumstances." *Id.* (citing *Graham*, 490 U.S. at 395). "This inquiry is fact specific and requires 'balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Jackson v. City of New York*, 939 F. Supp. 2d 235, 253 (E.D.N.Y. 2013) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)).

The body worn camera video from the three deputies present when Deputy D'Amato and Deputy Scribner forced Plaintiff into the back of the police vehicle does not show Deputy D'Amato and Deputy Scribner "smashing Plaintiff's head on the patrol car," as alleged by Plaintiff, (*see* Dkt. 1 at ¶ 21). When Plaintiff is forced into the police vehicle, Deputy D'Amato's body worn camera appears to be knocked to the ground during the altercation and only shows black. (Dkt. 69-6 (D'Amato) at 9:48-10:25). Deputy Scribner's body worn camera also does not clearly show what happened as he assisted Deputy D'Amato force Plaintiff into the police vehicle. (*Id.* (Scribner) at 2:14-2:23). Deputy Munzert's body worn camera is similarly unhelpful because as he reaches through the rear passenger side of the vehicle to pull Plaintiff into the vehicle, the camera only shows the rear seat and vehicle doorway. (*Id.* (Munzert) at 1:06-1:17).

Before Deputy D'Amato and Deputy Scribner forced Plaintiff into the police vehicle, Plaintiff persistently refused Deputy D'Amato's instructions to get in the vehicle for approximately five minutes. (*Id.* (D'Amato) at 4:50-9:48). Early in this exchange, Plaintiff asked what he is being arrested for and Deputy D'Amato told him it was for

driving while intoxicated.  (*Id.* (D'Amato) at 4:50-5:30).  Plaintiff said he was not driving and asked to be read his *Miranda* rights.  (*Id.* (D'Amato) at 5:39-5:50).  Deputy D'Amato grabbed Plaintiff's jacket and told him to "stop fucking around and get in the car."  (*Id.* (D'Amato) at 5:54-5:57).  Plaintiff repeated that he is not going to get in the police car.  (*Id.* (D'Amato) at 5:56-6:08).  Deputy D'Amato asked Plaintiff to sit in the police car and Plaintiff continued to refuse.  (*Id.* (D'Amato) at 6:20-6:30).  Deputy D'Amato then answered a series of Plaintiff's questions, explaining that he is under arrest for driving while intoxicated.  (*Id.* (D'Amato) at 6:40-6:50).  Deputy D'Amato warned Plaintiff that he will "throw" Plaintiff into the car if he did not get into the vehicle.  (*Id.* (D'Amato) at 6:52-6:56).  Plaintiff continued to refuse to get in the vehicle and Deputy D'Amato warned him again that he will "throw" him into the car.  (*Id.* (D'Amato) at 8:30-8:36).  Deputy D'Amato grabbed Plaintiff and tried to put him in the car.  (*Id.* (D'Amato) at 8:45-8:50).  Plaintiff asked a third-party bystander to come closer and Deputy D'Amato told the bystander to "stay right there."  (*Id.* (D'Amato) at 8:46-8:51).  Plaintiff called Deputy D'Amato a "bitch."  (*Id.* (D'Amato) at 9:26-9:29).  At the end of the standoff, Plaintiff asked, "So what are you going to do?" and Deputy D'Amato responds, "I'm going to put you in the car."  (*Id.* (D'Amato) at 9:44-9:45).  Plaintiff told Deputy D'Amato, "Put me in the fucking car."  (*Id.* (D'Amato) at 9:45-9:47).  At that point, Deputy D'Amato's body worn camera appears to be knocked to the ground.  Plaintiff was handcuffed with his hands behind his back throughout the entire altercation.

It is clear from the body worn camera video that Plaintiff consistently refused to get in the police vehicle after being told several times that he was under arrest and was

instructed to get into the vehicle. (*Id.* (D'Amato) at 4:50-9:48). The body worn camera video does not conclusively show how Plaintiff was forced into the vehicle. In his complaint, Plaintiff alleges that his head was smashed on top of the patrol car. (Dkt. 1 at ¶¶ 21, 47). Defendants' sworn affidavits submitted in support of the summary judgment motion paint a much gentler picture. (*See* Dkt. 69-11; Dkt. 69-12; Dkt. 69-13). Deputy D'Amato states that he "placed [Plaintiff] inside the squad car by physically pushing him inside." (Dkt. 69-11 at ¶ 15). Deputy Scribner states that he "assisted Deputy D'Amato in guiding [Plaintiff] into the backseat." (Dkt. 69-12 at ¶ 9). Deputy Munzert similarly states that he observed "Deputy D'Amato then guide[] [Plaintiff] into the driver side backseat."

Although Plaintiff need not show "a certain quantum of injury to establish a Fourth Amendment excessive force claim," *Brooks*, 384 F. Supp. 3d at 369, "it is relevant because it is probative of the amount and type of force actually used by the arresting officers," *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 644 (S.D.N.Y. 2020) (quotation omitted). Plaintiff alleged that the night of his arrest he had a "swollen soft ball size bump on the right side of [his] head. . . ." (Dkt. 1 at ¶ 88). Generally, "[i]njuries held to be de minimis for purposes of defeating excessive force claims include short-term pain, swelling, and bruising. . . ." *Lemmo v. McKoy*, No. 08-CV-4264 RJD, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011) (citing *Richardson v. New York City Health and Hospitals Corp.*, 05 Civ. 6278, 2009 WL 804096, at *10 (S.D.N.Y. Mar. 25, 2009)). However, courts have permitted excessive force claims to proceed where the injury caused was not permanent or severe. *See e.g.*, *Maxwell v. City of New York*, 380 F.3d 106, 108-09 (2d Cir. 2004),

*supplemented*, 108 F. App'x 10 (2d Cir. 2004) (overturning district court's determination that the plaintiff's injury was "insufficiently serious" for her excessive force claim where she "allegedly scraped her head when being shoved into the car"); *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("[A defendant] pushed [the plaintiff] up against the door and yanked [her] out, and threw [her] up against the fender . . . . causing bruises that lasted a [c]ouple weeks, maybe.") (quotations omitted); *but see Brooks*, 384 F. Supp. 3d. at 368-70 (holding that the plaintiff's allegation that he was "tossed . . . into the police car where Plaintiff hit his head, shoulder and back" was not enough to survive summary judgment on his excessive force claim).  Neither party has submitted any further proof of Plaintiff's injuries or lack of injuries.

Based on this record, the Court cannot hold as a matter of law that Deputy D'Amato and Deputy Scribner's actions were "'objectively reasonable' in light of the facts and circumstances facing [them]," *see Graham*, 490 U.S. at 397.  The body worn camera video is inconclusive and the parties present conflicting accounts regarding the level of force applied.  Although Plaintiff refused to get into the police vehicle for several minutes, he was handcuffed throughout the encounter and otherwise complied with Deputy D'Amato's initial direction to get on the ground.  If, as Plaintiff contends, his head was "smashed" into the patrol car, a reasonable jury could conclude that the amount of force violated Plaintiff's Fourth Amendment rights.  Furthermore, as discussed above, there is a dispute of material

fact regarding whether Deputy D'Amato had probable cause to arrest Plaintiff in the first place.[13]

Defendants also argue that "[s]ummary judgment is warranted as to plaintiff's excessive force claims [against Deputy D'Amato and Deputy Scribner] because of the doctrine of qualified immunity." (Dkt. 69-21 at 23). In this regard, Defendants contend that because Plaintiff "attempted to run from the police first through a car chase and then on foot," (*id*. at 24), qualified immunity protects the officers from any excessive force claim. But as discussed above, there are genuine issues of material fact as to whether Plaintiff was even operating the vehicle that Deputy D'Amato attempted to apprehend. And as also discussed above, the video evidence does not shed light on the degree of force, if any, used when forcing Plaintiff into the police vehicle. Similarly, the extent of Plaintiff's injuries, if any, remains unclear based on the current record.

"[I]t [is] well established that the use of excessive force in the course of an arrest is constitutionally prohibited and 'proper application [of the Fourth Amendment's objective reasonableness test] requires careful attention to the facts and circumstances of each particular case. . . .'" *Mickle*, 297 F.3d at 122 (2d Cir. 2002) (internal citation omitted) (quoting *Graham*, 490 U.S. at 396-97 (1989)). "Where the circumstances are in dispute,

---

[13]    Although "[w]hether probable cause for the arrest existed is not dispositive of an excessive-force claim," *see Ivery v. Baldauf*, 284 F. Supp. 3d 426, 437 (W.D.N.Y. 2018) (citing *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017)), the disputed facts underlying the arrest are relevant to understanding whether the force used by the deputies was "objectively reasonable in light of the facts and circumstances confronting them," *see Graham*, 490 U.S. at 397. Accepting Plaintiff's version of events, a reasonable jury may find that the force used by the deputies was objectively unreasonable under the circumstances. *See Maxwell*, 380 F.3d at 108-09.

and 'contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness,' a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Id.* (quoting *Kerman v. City of New York*, 261 F.3d 229, 239 (2d Cir. 2001); *see also Curry v. City of Syracuse*, 316 F.3d 324, 334-35 (2d Cir. 2003) ("Because summary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain, the district court erred by entering summary judgment in favor of [the defendant].").  While "the right to make an arrest accompanies with it the right to use some degree of physical coercion," *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (citing *Graham*, 490 U.S. at 396), the amount of physical coercion and force used cannot be resolved on the current record. Thus, the Court denies summary judgment in favor of either Deputy D'Amato or Deputy Scribner on the excessive force claim.

**J.  <u>Equal Protection</u>**

Plaintiff's first cause of action also asserts an equal protection claim.  (Dkt. 1 at ¶ 34).  Because Plaintiff failed to allege a similarly situated person who was treated differently, the Court dismisses his equal protection claim.

"The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike." *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 204 (E.D.N.Y. 2010) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  Plaintiff does not allege a violation of equal protection due to membership in a protected group or class.  Nevertheless, "an individual not alleging invidious discrimination on the basis of membership in some group may [still] prevail on

an equal protection claim under the 'class of one' theory. . . ." *Id.* at 204-05 (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000)).  "Under a 'class of one' equal protection claim, a plaintiff must allege that (1) '[he] has been intentionally treated differently from others similarly situated' and (2) 'there is no rational basis for the difference in treatment.'" *Id.* at 205 (quoting *Vill. of Willowbrook*, 528 U.S. at 564).  Plaintiff does not allege a similarly situated individual in his complaint to support his equal protection claim. Therefore, Plaintiff's equal protection claim fails and is accordingly dismissed.

### K. <u>Substantive Due Process</u>

In his substantive due process claim, Plaintiff alleges that Defendants Wayne County, Deputy D'Amato, Deputy Scribner, and Deputy John Does "trumped up" false charges intended to cover up their alleged excessive force and assault. (Dkt. 1 at ¶ 66).  He contends that "[a]s a result of his arrest, Plaintiff was denied his substantive rights under the United States Constitution and the New York State Constitution." (*Id.* at ¶ 67).

"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'" *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal quotations and citations omitted).  "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)).

"Because the Fourth Amendment provides the source for a claim under Section 1983 premised upon an allegedly false arrest, false imprisonment, or malicious prosecution, plaintiffs cannot state a substantive due process claim against defendants based on such conduct." *Jackson ex rel. Jackson v. Suffolk Cnty.*, 87 F. Supp. 3d 386, 399 (E.D.N.Y. 2015); *see Green-Page v. United States*, No. 1:20-CV-00837, 2024 WL 3584194, at *13 (W.D.N.Y. July 30, 2024) (dismissing substantive due process claim because the claim could be characterized as a violation of the Fourth Amendment).

Here, Plaintiff's substantive due process claim is based solely on his Fourth Amendment claims for false arrest and excessive force. (Dkt. 1 at ¶¶ 66-67). Accordingly, Plaintiff's substantive due process claims are dismissed. *See Ying Li*, 246 F. Supp. 3d at 633 (dismissing the plaintiff's substantive due process claim where it was "subsumed by all of her other Section 1983 claims").

**L.  Procedural Due Process**

In his procedural due process claim, Plaintiff makes two allegations regarding purported violations of his procedural rights. First, Plaintiff claims without explanation or elaboration that his procedural rights were violated as a result of his arrest. (Dkt. 1 at ¶ 70). Second, he alleges that Wayne County Sheriff's Office, the Wayne County District Attorney, and ADA John Does withheld Deputy D'Amato's body worn camera video footage, thereby violating his procedural rights. (Dkt. 1 at ¶ 71).

The Fourteenth Amendment to the United States Constitution provides in part that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To plead a violation of procedural due process, "a

plaintiff must first identify a property right, second show that the government has deprived

him of that right, and third show that the deprivation was effected without due process."

*J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (internal quotation and citation omitted)

First, Plaintiff's mere conclusory allegation that his arrest denied him his procedural

rights is insufficient to maintain a procedural due process claim. *See Cifarelli v. Village of*

*Babylon*, 93 F.3d 47, 51 (2d Cir. 1996)) ("[M]ere conclusory allegations, speculation or

conjecture will not avail a party resisting summary judgment."). Defendants argue that

Plaintiff was afforded all process that he was due and cite to Plaintiff's successful dismissal

of the criminal charges. (Dkt. 69-21 at 29; Dkt. 69-16). Plaintiff neither produced nor

points to any evidence to indicate what process was denied to him other than his mere say-

so. Moreover, like Plaintiff's substantive due process claim, his procedural due process

claim is encompassed by his Fourth Amendment claims. *Oudekerk v. Lehoisky*, No. 1:24-

CV-0311 (AMN/TWD), 2024 WL 1693850 at *6 (N.D.N.Y. Apr. 19, 2024), *report and*

*recommendation adopted*, No. 1:24-CV-0311 (AMN/TWD), 2024 WL 3385014

(N.D.N.Y. July 12, 2024) ("Because Plaintiff's due process claims are merely duplicative

of his other claims that are explicitly covered by the Fourth Amendment, he cannot bring

an additional claim for violation of his right to substantive or procedural due process under

the Fourteenth Amendment.").

Second, the Court construes Plaintiff's allegation that certain Defendants withheld

body worn camera video as an alleged *Brady* violation. "A classic Brady violation contains

three elements: The evidence at issue must be favorable to the accused, either because it is

exculpatory, or because it is impeaching; that evidence must have been suppressed by the

State, either willfully or inadvertently; and prejudice must have ensued." *Ying*, 246 F. Supp. 3d at 627 (quoting *Fappiano v. City of New York*, 640 Fed. App'x 115, 118 (2d Cir. 2016)).  "To establish prejudice, a plaintiff must show the evidence was material; i.e., whether the evidentiary suppression undermines confidence in the outcomes of the trial." *Id.* (quoting, *Fappiano*, 640 Fed. App'x at 118).  As noted above, Plaintiff's criminal charges in the underlying matter were dismissed and therefore he suffered no prejudice from the alleged *Brady* violation.  (*See* Dkt. 69-16).  Furthermore, as discussed above, Plaintiff is unable to maintain this cause of action against each of the Defendants identified in the complaint.  Wayne County Sheriff's Office is not an entity capable of being sued, and Wayne County District Attorney and ADA John Does are shielded by absolute immunity for conduct taken within the scope of their prosecutorial function.  The Court therefore dismisses Plaintiff's procedural due process claims.

### M. *Monell* Liability

Plaintiff asserts several claims against Defendant Wayne County, including a freestanding *Monell* claim.  (*See* Dkt. 1).[14]  Defendants argue that Plaintiff failed to

---

[14]    Although Plaintiff's third cause of action purports to be a freestanding *Monell* claim, "*Monell* does not provide an independent separate cause of action against a municipality; 'it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation,'" *Gem Fin. Serv., Inc. v. City of New York*, 298 F. Supp. 3d 464, 490 (E.D.N.Y. 2018) , *as amended* (June 27, 2018) (quoting *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)).  "In other words, *Monell* is not a cause of action, but is rather a form of liability." *Watkins v. Town of Webster*, 592 F. Supp. 3d 96, 118-19 (W.D.N.Y. 2022).  Accordingly, the Court dismisses Plaintiff's third cause of action as a standalone claim but considers the allegations against Wayne County contained therein in the context of Plaintiff's other substantive claims.

plausibly allege *Monell* liability, thereby warranting dismissal of Wayne County pursuant

to Rule 12(c).  (Dkt. 69-21 at 24-28).  The Court agrees and accordingly dismisses Wayne

County as a Defendant.

"A plaintiff cannot allege a *Monell* claim where he has not alleged a valid underlying

constitutional deprivation."  *Lacey v. Yates Cnty.*, 30 F. Supp. 3d 213, 228 (W.D.N.Y.

2014) (citing *Johnson v. City of New York*, 551 Fed. App'x. 14, 15 (2d Cir. 2014)).  As

discussed above, Plaintiff's surviving constitutional causes of action are the false arrest and

malicious prosecution claims against Deputy D'Amato and the excessive force claim

against both Deputy D'Amato and Deputy Scribner.  In order to hold Wayne County liable

for these alleged constitutional deprivations, Plaintiff must "demonstrate[] that the

constitutional violation complained of was caused by a municipal 'policy or custom.'"  *Id.*

(citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978)).

"To allege the existence of an affirmative municipal policy, a plaintiff must make factual

allegations that support a plausible inference that the constitutional violation took place

pursuant either to a formal course of action officially promulgated by the municipality's

governing authority or the act of a person with policymaking authority for the

municipality."  *Id.* (quoting *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir.

2009)).  "Mere boilerplate assertions that a municipality has such a custom or policy, which

resulted in a deprivation of the plaintiff's rights, do not rise to the level of plausibility."  *Id.*

(quotations omitted).

Furthermore, "isolated acts . . . by non-policymaking municipal employees are

generally not sufficient to demonstrate a municipal custom, policy, or usage that would

justify liability." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (citation omitted). Indeed, the acts and practices must be "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Giaccio v. City of New York*, 308 Fed. App'x. 470, 472 (2d Cir. 2009) (affirming summary judgment in favor of defendants dismissing *Monell* claim where plaintiff identified, "at most, only four examples" of constitutional violations, because "[t]his evidence falls far short of establishing a practice that is so persistent and widespread as to justify the imposition of municipal liability.") (summary order) (internal quotations omitted).

Here, Plaintiff's allegations of municipal liability do not rise above "mere boilerplate assertions." In conclusory fashion, Plaintiff alleges that "it was the custom, policy and practice of Wayne [County], to tolerate, condone, and encourage constitutional violations, such as those alleged by Plaintiff herein. . . ." (Dkt. 1 at ¶ 53). Plaintiff similarly asserts that "it was the custom, policy and practice of Wayne [County] to authorize and permit certain Deputy Sheriffs, including the individual Defendants, to cause the search and seizure of Plaintiff's person despite the lack or a warrant or any other justification that would justify the search and seizure." (*Id.* at ¶ 56). Plaintiff alleges that Deputy D'Amato only engaged in one similar incident in 2020 and that this was the second time Plaintiff had been subjected to a false arrest, excessive force, and assault. (*Id.* at 58-59). Two incidents are not sufficient to establish a persistent and widespread practice necessary to maintain a *Monell* claim. Plaintiff's allegations are wholly conclusory and he fails to set forth facts supporting his allegations. Accordingly, Plaintiff's claims against Wayne County are dismissed.

### N. **State Law Claims**

Plaintiff asserts claims pursuant to the New York State Constitution, in addition to common law tort claims of assault and battery, and negligent hiring, supervision, and retention.  (Dkt. 1 at ¶¶ 65-72, 84-103).  For the reasons discussed below, only Plaintiff's state-law assault and battery claim may proceed to trial.

### 1. **New York State Constitution**

Plaintiff asserts substantive and procedural due process claims pursuant to the New York State Constitution.  (Dkt. 1 at ¶¶ 65-72).  These claims must be dismissed as courts in this Circuit "have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under [Section] 1983." *Talarico v. Port Auth. of New York & New Jersey*, 367 F. Supp. 3d 161, 171 (S.D.N.Y. 2019) (alteration in original) (citations omitted).

"Accordingly, where a complaint alleges no theories of liability that are cognizable exclusively under the New York State Constitution, any claims brought under the state constitution are ordinarily dismissed." *Id.*; *see also Gounden v. City of New York*, No. 14 Civ. 7411(BMC), 2015 WL 5793625, at *5 n.3 (E.D.N.Y. Oct. 2, 2015) ("It is a common view among District Courts in this Circuit, however, that there is no right of action under the New York State Constitution for claims that can be brought under § 1983.") (citation omitted).  Plaintiff asserted substantive and procedural due process violations under both the New York State Constitution and the United States Constitution.  (Dkt. 1 at ¶¶ 67, 70).  Consequently, because Plaintiff's complaint alleges no theories of liability that are "cognizable exclusively under the New York State Constitution," his claims brought under

the New York State Constitution are dismissed.  *Talarico*, 367 F. Supp. 3d at 172 (concluding that plaintiff's "state-law claims rise or fall with her Section 1983 claims").

### 2. Assault and Battery

Plaintiff asserts a state law claim for assault and battery against Wayne County, Deputy D'Amato, Deputy Scribner, and the Deputy John Does.  (Dkt. 1 at ¶¶ 84-96).  Defendants argue that this claim must be dismissed for the same reasons as Plaintiff's excessive force claim.  (Dkt. 69-21 at 33).[15]  To the extent the claim is asserted against Deputy D'Amato and Deputy Scribner, the Court disagrees.  And because the theory of municipal liability is different with respect to the assault and battery claims as opposed to the § 1983 claims, the claim may also proceed against Wayne County.

"Except for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical."  *Humphrey v. Landers*, 344 Fed. App'x. 686, 688 (2d Cir. 2009) (summary order) (quoting *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991) (alterations omitted); *see also Benson v. Yaeger*, No. 05–CV–784S, 2009 WL 1584324, at *4 n.6

---

[15]    Defendants also argue that the assault and battery claim must be dismissed because Plaintiff has only alleged negligent conduct.  (Dkt. 69-21 at 32-33).  The Court disagrees.  Although unartfully pled, Plaintiff alleges in his assault and battery claim that "Defendant's actions were intentionally, recklessly and/or negligently done to intimidate and did cause physical pan and emotional distress to Plaintiff."  (Dkt. 1 at ¶ 90).  Construing his complaint liberally, Plaintiff plainly alleges that Defendants actions were intentional—especially when one considers that Plaintiff is proceeding *pro se* and therefore not held to the same standard as an attorney.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." (quotations omitted)).

(W.D.N.Y. June 3, 2009) ("The test for whether a plaintiff can maintain a New York State law assault and battery cause of action against law enforcement officials is the exact same test as the one used to analyze a Fourth Amendment excessive force claim . . . .") (quotation omitted).  In fact, a state-law claim for assault and battery is "more plaintiff friendly, because under New York law '[i]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest.'"  *Graham v. City of New York*, 928 F. Supp. 2d 610, 624-25 (E.D.N.Y. 2013) (quoting *5 Borough Pawn, LLC. v. Marti*, 753 F. Supp. 2d 186, 201 (S.D.N.Y. 2010)).  Because there is a question of fact regarding whether Defendant D'Amato had probable cause to arrest Plaintiff, and because the record is not at all clear on the extent of any force used and amount of any injuries inflicted, summary judgment is denied as to Deputy D'Amato and Deputy Scribner.  *See id.* at 625; *Mesa v. City of New York*, No. 09 CIV. 10464 JPO, 2013 WL 31002, at \*32 (S.D.N.Y. Jan. 3, 2013) ("[Plaintiff's] assault and battery claims also survive summary judgment, as there are issues of material fact related to the probable cause for her arrest.").[16]

---

[16]    Defendants do not expressly argue that Deputy D'Amato or Deputy Scribner are entitled to qualified immunity on Plaintiff's state-law assault and battery claim.  But even if they had, the Court would decline to find those defendants entitled to qualified immunity for the same reasoning discussed in connection with the excessive force claim.  *Graham*, 928 F. Supp. 2d at 625 ("The standard for determining whether police officers enjoy immunity for false arrest and assault and battery actions is the same under state law as it is under federal law.").

Furthermore, "[a]lthough a municipality cannot be held vicariously liable on a section 1983 claim, under New York state law, a municipality may be held vicariously liable on state law claims asserted against individual officers under a theory of *respondeat superior.*" *Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 267 (N.D.N.Y. 2014). "This includes claims against a municipality for the actions of its officers in committing assault and battery." *Id*. Defendants do not address this issue in their motion papers. Because issues of fact preclude summary judgment in favor of Deputy D'Amato or Deputy Scribner on the assault and battery claims, Wayne County is also not entitled to summary judgment as it may be held liable under a theory of *respondeat superior*. *See Warr v. Liberatore*, 270 F. Supp. 3d 637, 654 (W.D.N.Y. 2017).

### 3. Negligent Hiring, Supervision, and Retention

Defendants argue that Plaintiff's claim against Wayne County for negligent hiring, improper supervision, and improper retention must be dismissed because Plaintiff failed to state a cognizable claim and that the claim is unsupported by the record. (Dkt. 69-21 at 33-34). The Court agrees with Defendants and accordingly dismisses Plaintiff's claim for negligent hiring, improper supervision, and improper retention.

"A claim for negligent hiring, retention, [and] supervision . . . is based on the employer's direct negligence." *Cruz v. New York*, 24 F. Supp. 3d 299, 311 (W.D.N.Y. 2014) (quotation omitted). Negligent hiring and retention claims "arise from an employer having placed the employee in a position to cause foreseeable harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in making its decision concerning the hiring and retention of the employee." *Id.* (quotation

omitted). "Similarly, claims for negligent supervision and training arise when an employer has notice of the employee's tendency for the bad conduct and its lack of supervision or inadequate training is the proximate cause of a plaintiff's injuries." *Id.* (quotation and alterations omitted). "[A]n essential element of a cause of action in negligent hiring, retention, supervision, and training is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Bouche v. City of Mount Vernon*, No. 11-CV-5246, 2012 WL 987592, at *9 (S.D.N.Y. Mar. 23, 2013). Furthermore, a "cause of action for negligent hiring or retention requires allegations that the employer failed to investigate a prospective employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee." *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 464 (S.D.N.Y. 2012) (quotation and alteration omitted).

Here, Plaintiff's negligent hiring, supervision, and retention claim is akin to his freestanding *Monell* claim. Plaintiff asserts that "[u]pon information and belief, it was the custom, policy and practice of Wayne [County] to hire certain Deputy Sheriff's [sic] . . . without conducting the appropriate background checks, investigations, and psychological evaluations." (Dkt. 1 at ¶ 98). Plaintiff similarly asserts that it was Wayne County's custom, policy, and practice to conduct inadequate investigations and to continue to employ deputies after they commit constitutional rights violations. (*Id.* at ¶¶ 99-100). To support these conclusory assertions, Plaintiff alleges that he previously filed a complaint with the Wayne County Sheriff's Office against Deputy D'Amato due to a "similar incident

that occured [sic] on June 13, 2020" and that Deputy D'Amato was not disciplined. (Dkt. 1 at ¶ 58).

However, Plaintiff did not submit any evidence of Wayne County's hiring, training, supervision or retention policies generally or as applied to the individual defendants. Plaintiff also did not submit any evidence of the complaint he alleged that he previously filed against Deputy D'Amato. Without the complaint or any additional sworn testimony from Plaintiff regarding the prior "similar incident" it is impossible to conclude that issues of fact exist as to whether Wayne County had "notice of the employee's tendency for the bad conduct," *see Cruz*, 24 F. Supp. 3d at 311. Similarly, without any evidence of the Defendants' policies and procedures, Plaintiff's assertions are based purely on speculation. Accordingly, Plaintiff's negligent hiring, supervision, and retention claim does not rise above "conclusory allegations or unsubstantiated speculation" necessary to defeat Defendants' summary judgment motion, *see Robinson*, 781 F.3d at 44, and must therefore be dismissed.

Additionally, Plaintiff's claim for negligent hiring, supervision, and retention also fails because he alleges that the individual defendants were acting within their scope of employment. "To maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment." *Velez v. City of New York*, 730 F.3d 128, 136-37 (2d Cir. 2013) (quotations and citation omitted). Plaintiff alleges in his seventh cause of action that "[a]t all times mentioned, Defendants were acting within the scope of employment as Deputy Sheriffs." (Dkt. 1 at ¶ 91). He also asserts that "[a]t all

times mentioned, all officers and employees of Wayne [County] were acting within the scope of their employment." (*Id.* at ¶ 92). As Plaintiff concedes that the individual defendants were acting within the scope of employment, his negligent hiring, supervision, and retention claim must be dismissed against Wayne County. *See Velez*, 730 F.3d at 137 (dismissing negligent training claim where the plaintiff "conceded that the defendants were acting within the scope of their employment").

### O. Punitive Damages

Plaintiff asserts that he is entitled to an award of punitive damages for each of his causes of action except for his freestanding *Monell* claim. (Dkt. 1 at ¶¶ 44, 51, 68, 72, 83, 103). Defendants argue that there is no basis for punitive damages in this matter. (Dkt. 69-21 at 36).

"Punitive damages may be awarded in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). "The purpose of punitive damages is 'to punish the defendant and deter him and others from similar conduct in the future.'" *Lin v. Cnty. of Monroe*, 66 F. Supp. 3d 341, 362 (W.D.N.Y. 2014) (quoting *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996)). "Although punitive damages are not available against municipalities or against individuals sued in their official capacities, punitive damages may be awarded against defendants sued in their individual capacities." *Id.* (quotation omitted).

- 48 -

Based on the record before the Court, it is premature to preclude Plaintiff from pursuing punitive damages at this time. "Generally, the issue of whether to award punitive damages is an issue for the jury to decide based on an evaluation of the plaintiff['s] proof of sufficiently serious misconduct." *Id.* (quotation omitted); *see Picciano v. McLoughlin*, 723 F. Supp. 2d 491, 506 (N.D.N.Y. 2010) ("Where the plaintiff has provided sufficient evidence to overcome summary judgment with respect to excessive force, the Court cannot state as a matter of law that the [plaintiff] is not entitled to punitive damages.") (quotation omitted). Plaintiff has provided sufficient evidence to overcome summary judgment on several of his claims. It will be left to the trier of fact to determine if Plaintiff's proof meets the sufficiency of serious misconduct to merit an award of punitive damages. *See Lin*, 66 F. Supp 3d. at 362-63 (permitting the plaintiff to pursue a punitive damages award against the defendant in his individual capacity related to excessive force claim).

## CONCLUSION

For the foregoing reasons: (1) Defendants' motion for judgment on the pleadings and summary judgment (Dkt. 69) is granted in part and denied in part; (2) Plaintiff's motion to file a sur-reply (Dkt. 86) is denied; (3) Plaintiff's motion to reopen discovery (Dkt. 88) is denied; and (4) Defendants' motion to reject Plaintiff's motions (Dkt. 90) is denied as moot. Plaintiff may proceed to trial on the following claims against the following defendants: (1) his false arrest claim under § 1983 against Deputy D'Amato; (2) his malicious prosecution claim under § 1983 against Deputy D'Amato; (3) his excessive force claim under § 1983 against Deputy D'Amato and Deputy Scribner; and (4) his assault and battery claim under state law against Deputy D'Amato, Deputy Scribner, and Wayne

County.   All other claims and defendants not referenced are hereby dismissed with prejudice.

     SO ORDERED.

                          ELIZABETH A. WOLFORD
                          Chief Judge
                          United States District Court

Dated:        March 10, 2025
               Rochester, New York